Justin Kraske
Jeremiah Langston
Special Assistant Attorneys General
Montana Public Service Commission
P.O. Box 202601
Helena, MT 59620-2601
(406) 444-6376
jkraske@mt.gov
jlangston@mt.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, HELENA DIVISION

| | |
|---|---|
| **Bear Gulch Solar, LLC, Canyon Creek Solar, LLC, Couch Solar, LLC, Fox, Farm Solar, LLC, Glass Solar, LLC, Malt Solar, LLC, Martin Solar, LLC, Middle Solar, LLC, River Solar, LLC, Sage Creek Solar, LLC, Sypes Canyon Solar, LLC, Valley View Solar, LLC, Ulm Solar, LLC, Cypress Creek Renewables Development, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**Montana Public Service Commission and Bob Lake, Travis Kavulla, Brad Johnson, Roger Koopman, and Tony O'Donnell, in their official capacities as Commissioners,**<br><br>Defendants. | **CV-18-6-H-CCL**<br><br>**Honorable Charles C. Lovell**<br><br>**Montana Public Service Commission's Brief in Support of Its Partial Motion to Dismiss and Motion for Stay** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................2

FACTS ........................................................................................................6

    I.    The Commission's Establishment of the *Whitehall Wind* LEO Standard ...........................................................................................6

    II.    Plaintiffs' Opposition to the LEO Standard and Its Application to Them ..............................................................................................8

STANDARD FOR DISMISSAL ..................................................................12

ARGUMENT ..............................................................................................13

    I.    Plaintiffs Improperly Raise "As-Applied" Claims in the Complaint .......14

        A.    "As-Applied" Versus Implementation Claims .........................14

            1.    "As-Applied" Versus Implementation Precedent in LEO-Related Claims ......................................................16

            2.    "As-Applied" and Implementation Distinction Limits Relief that Can Be Provided by the Federal Court System ...........................................................................19

            3.    The Facts Here Demonstrate Two Separate Claims Are Being Made ...........................................................21

    II.    The Remaining Claim—the Implementation Claim—Should Be Stayed ................................................................................................22

        A.    Standard for a Stay ..................................................................22

            1.    The timeframe under MAPA for a rulemaking is definitely and limited ...............................................24

2.   The relief available in an implementation challenge
ameliorates towards granting a stay ...............................26

3.   The pending rulemaking has the potential to moot
Plaintiffs' implementation challenge.............................26

4.   A stay of this litigation would promote efficiency and
fairness..........................................................................27

CONCLUSION.......................................................................................28

CERTIFICATE OF SERVICE ...............................................................30

CERTIFICATE OF COMPLIANCE.......................................................31

# TABLE OF AUTHORITIES

**Cases**

*Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*,
 208 F. Supp. 3d 390, 396 (D. Mass. 2016)..........................................3, 6, 20, 26

*Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*,
 875 F.3d 64, 68 (1st Cir. 2017)..................................................................3, 18, 28

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*,
 159 F.3d 129, 135 (3d Cir. 1998) ........................................................................27

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
 498 F.3d 1059, 1066 (9th Cir. 2007) ...................................................................24

*Erickson v. Pardus*,
 551 U.S. 89 (2007)...............................................................................................12

*Exelon Wind 1, L.L.C. v Nelson*,
 766 F.3d 380, 388 (5th Cir. 2014) .........................................................16, 17, 21

*FERC v. Mississippi*,
 456 U.S. 742, 751 (1982)......................................................................................27

*FLS Energy, Inc.*,
 157 FERC 61,211 (2016)......................................... 4, 5, 10, 13, 19, 22, 26, 27

*Greensboro Lumber Co. v. Georgia Power Co.*,
 643 F. Supp. 134, 1374 (N.D. Ga. 1986),
 *aff'd* 844 F.2d 1538 (11th Cir. 1988)..................................................................16

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) ............................................................12

*Hishon v. King & Spalding*,
 467 U.S. 69, 73 (1984)..........................................................................................13

*Indep. Energy Producing Assoc., Inc. v. Cal. Pub. Utilities Comm'n.*,
 36 F.3d 848, 856 (9th Cir. 1994) ........................................................................ 3

**Cases** (cont'd)

*JD Wind 1, LLV v. Smitherman*,
   No. A-09-CA-917-SS, 2010 U.S. Dist. LEXIS 96535
   (W.D. Tex. Sep. 14, 2010)................................................................16

*Lair v. Murry*,
   871 F. Supp. 2d 1058, 1068 (D. Mont. 2012)....................................24

*Landis v. N. Am. Co.*,
   299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ........................22, 23

*Lockyer v. Mirant Corp.*, 398 F.3d 1089, 1110-11 (9th Cir. 2005)..........................24

*Massachusetts Inst. of Tech v. Massachusetts Dep't of Pub. Utilities*,
   941 F. Supp. 233, 238 (D. Mass. 1996)..............................................15

*Meek v. County of Riverside*,
   183 F.3d 962, 965 (9th Cir. 1999) ....................................................12

*Outdoor Media Group, Inc. v. City of Beaumont*,
   506 F.3d 895, 899 (9th Cir. 2007) ....................................................13

*Portland General Electric Company v. FERC*,
   854 F.3d 692, 701-702 (D.C. Cir. 2017) ............................................4

*Power Resource Group, Inc. v. Klein*,
   No. A-03-CA-762-H, 2004 U.S. Dist. LEXIS 28820
   (W.D. Tex. Feb. 18, 2004)..................................................17, 20, 26

*Power Res. Grp., Inc. v. Tex. PUC*,
   422 F.3d 231, 235 (5th Cir. 2005) ..........................................3, 17, 21

*Printz v. United States*,
   521 U.S. 898, 928-29 (1997) ..........................................................27

*Publ. Service Company of Oklahoma v. Okla. Corp. Comm'n*,
   115 P.3d 861, 872 (Okla. 2005)......................................................18

**Cases (cont'd)**

*South River Power Partners, L.P. v. Penn. Pub. Util. Comm'n*,
    696 A.2d 926 (Pa. Commw. Ct. 1997) ............................................................18

*Tosco Corp. v. Communities for a Better Environment*,
    236 F.3d 495, 499 (9th Cir. 2001) .....................................................................12

*Whitehall Wind, LLC v. Montana Public Service Comm.*,
    Cause No. DV-03-10080, 2008 Mont. Dist. LEXIS 842
    (Mont. 5th Jud. Dist. Ct. 2008)..........................................................6, 7, 11, 21

*Whitehall Wind, LLC v. Mont. Pub. Serv. Comm'n*,
    2015 MT 119, 379 Mont. 119, 347 P.3d 1273 (2015)..........................3, 4, 8, 18

*Winding Creek Solar LLC v. Peevey*,
    No. 13-CV-04934-JD, 2017 U.S. Dist. LEXIS 201893
    (N.D. Cal. Dec 6, 2017) ......................................................................19, 20, 26

*Windway Techs. v. Midland Power Coop.*,
    No. C00-3089MWB, 2001 U.S. Dist. LEXIS 3430
    (N.D. Iowa Mar. 5, 2001) ...................................................................................15

**Statutes**

16 U.S.C. § 824a-2(a) ..............................................................................................2
16 U.S.C. § 824a-3(f)..........................................................................................3, 15
16 U.S.C. § 824a-3(g) ...........................................................................................14
16 U.S.C. § 824a-3(h) ...........................................................................................15
16 U.S.C. § 824a-3(h)(2)(B) ......................................................................1, 10, 14
18 CFR 292.304(d)(2)..............................................................................................4

Mont. Code Ann. §§ 2-4-301 to -323 (2017)...........................................................5
Mont. Code Ann. § 2-4-302(3) ..............................................................................25
Mont. Code Ann. § 2-4-302(4) ..............................................................................24
Mont. Code Ann. § 2-4-315.................................................................................6, 11
Mont. Code Ann. § 2-4-702(1)(a)..........................................................................18
Mont. Code Ann. § 2-4-704....................................................................................22

**Rules**:

Fed. R. Civ. P. 12(a)(4) ............................................................................1
Fed. R. Civ. P. 12(b)(1) ...........................................................................12
Fed. R. Civ. P. 12(b)(6) ......................................................................12, 13
Tex. Admin. Code 25.242 .....................................................................17, 21

**Other**:

Policy Statement Regarding the Commission's Enforcement Role
    Under Section 210 of the Public Utility Regulatory Policies Act of 1978,
    23 FERC ¶ 61,304 (May 31, 1983) ..................................................12

Defendants Montana Public Service Commission, and Bob Lake, Travis Kavulla, Brad Johnson, Roger Koopman, and Tony O'Donnell, in their official capacities as Commissioners (collectively, "Commission" or "PSC"), by and through their counsel of record, Justin Kraske and Jeremiah Langston, file this Brief in Support of their Partial Motion to Dismiss and Motion for Stay of the Complaint filed by Bear Gulch Solar, LLC, Canyon Creek Solar, LLC, Couch Solar, LLC, Fox Farm Solar, LLC, Glass Solar, LLC, Malt Solar, LLC, Martin Solar, LLC, Middle Solar, LLC, River Solar, LLC, Sage Creek Solar, LLC, Sypes Canyon Solar, LLC, Valley View Solar, LLC, Ulm Solar, LLC (collectively, "QF Plaintiffs"), and Cypress Creek Renewables Development, LLC. Because Cypress Creek Renewables Development, LLC is not a qualifying facility ("QF"), Defendants request this Plaintiff be dismissed from this litigation.[1] Finally, the Commission respectfully requests that it be permitted to file an answer, within fourteen days after the Court's resolution of the Commission's Motion, in the event the Plaintiffs' entire Complaint is not dismissed or stayed.[2]

---

[1] *See* Compl. at p. 1 (acknowledging Cypress Creek Renewables Development, LLC is separate and distinct from the QF projects). Only electric utilities, qualifying cogenerators or qualifying small power producers may petition FERC and/or the Court under section 210(h)(2)(B) of PURPA. 16 U.S.C. § 824a-3(h)(2)(B).

[2] *See* Fed.R.Civ.P. 12(a)(4) (providing an automatic 14-day extension to file an answer after resolution of a motion to dismiss).

## INTRODUCTION

The Complaint filed by the Plaintiffs results from the Commission issuing orders that denied the Plaintiffs, all but one of which are QFs, the ability to enter into contracts to sell power to an electric utility, NorthWestern Corporation ("NorthWestern"), at a particular rate. Under Section 210(a) of the Public Utilities Regulatory Policy Act of 1978 ("PURPA"), QFs may compel utilities such as NorthWestern to buy power at an "avoided cost" rate. 16 U.S.C. 824a-2(a). As a result of such Commission orders, the Plaintiffs were only eligible to sell their power at a lower avoided cost rate, which rate better reflected NorthWestern's avoided cost. The rate Plaintiffs were eligible for depended on whether and when each had established a legally enforceable obligation ("LEO"), a term of art crafted by the Federal Energy Regulatory Commission ("FERC") in its regulations implementing PURPA. As demonstrated below, this Court has jurisdiction over only one issue presented: whether the Commission's standard for determining whether an LEO has been incurred is lawful. The Court should stay its consideration of this issue for the reasons explained below. The Court should dismiss all other claims on jurisdictional grounds.

PURPA directed FERC to adopt regulations that would promote energy purchases from QFs. State regulatory agencies, like the Commission, were then directed to adopt rules which complied with FERC's requirements. The states were

given broad discretion in implementing PURPA. *Indep. Energy Producing Assoc., Inc. v. Cal. Pub. Utilities Comm'n.,* 36 F.3d 848, 856 (9th Cir. 1994). PURPA, FERC, and the courts also created a scheme for judicial review of state regulatory action taken under PURPA that allocates jurisdiction over claims against a state's regulatory authority to either a state court or to a federal court. Specifically, the scheme for judicial review distinguishes between "implementation" challenges and "as-applied" challenges. "[A]n as-applied claim challenges the application of a state agency's rules to an *individual petitioner.* Such claims are reserved to the state courts." *Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 208 F. Supp. 3d 390, 396 (D. Mass. 2016) (emphasis added). In contrast, "[a]n implementation claim involves a contention that the state agency . . . has failed to implement a lawful implementation plan under § 824a-3(f) of the PURPA . . . ." *Power Res. Grp., Inc. v. Tex. PUC*, 422 F.3d 231, 235 (5th Cir. 2005). Federal courts have exclusive jurisdiction over implementation challenges and state courts have exclusive jurisdiction over "as-applied" challenges. *Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 68 (1st Cir. 2017).

The Complaint alleges that the Commission's *Whitehall Wind* LEO standard violates PURPA and FERC's implementing regulations. Compl., at ¶¶ 11–12. A state's LEO standard is often significant in QF proceedings because the date the LEO was incurred may determine when a utility's avoided cost is calculated. *See*

18 C.F.R. § 292.304(d)(2). Defendants concede that this claim is an implementation claim. Plaintiffs, however, also assert that any QF projects that incurred LEOs on or before June 16, 2016, *including the Plaintiffs' projects*, must be granted a contract allowing them to sell energy to NorthWestern at $66 per megawatt-hour ("MWh"). Compl., at ¶ 12. This is an "as-applied" claim, as it relates to the specific facts concerning whether and when each QF established an LEO, and the appropriate avoided cost rate for each QF. Plaintiffs have improperly included this "as-applied" claim—*see* Part B of Plaintiffs' Prayer for Relief—in their Complaint before this Court.

Part A of Plaintiffs' Prayer for Relief and the first clause of Part B all constitute a single claim: whether Commission's LEO standard applied to the Plaintiffs and other QFs is consistent with PURPA. The Commission has initiated a rulemaking to modify the substance of the applied *Whitehall Wind* LEO standard[3] and thus respectfully requests that this Court grant a stay of this proceeding until the Commission has acted. Assuming for the sake of argument Plaintiffs have raised meritorious arguments in their implementation challenge, those same arguments can be considered in the notice and comment process available under

---

[3] In proposing this new LEO standard, the Commission is not conceding that FERC's statements in *FLS Energy* are binding. *See Portland General Electric Company v. FERC*, 854 F.3d 692, 701–702 (D.C. Cir. 2017).

the Montana Administrative Procedure Act ("MAPA"). *See* Mont. Code Ann. §§ 2-4-301 to -323 (2017). The proposed rulemaking is responsive to the policy concerns FERC expressed in *FLS Energy, Inc.*, 157 FERC ¶ 61,211 (2016) (Compl., Ex. 1) ("*FLS Energy*") about the Commission's LEO standard.

Under the Commission's proposed rulemaking, QFs would no longer be required to demonstrate that they have a fully signed interconnection agreement, eliminating any need for unilateral action on the part of the utility to establish an LEO. Commission's Br. in Support of Mot. for Jud. Notice, Ex. 2 (Mar. 13, 2018) (Doc. 28-2). This proposed rule cures the defect that FERC identified, while maintaining a bar against projects that are merely speculative in nature and which, in the Plaintiffs' words, have not shown sufficient "objective manifestations" to sell power unconditionally to a utility subject to PURPA by completing milestones associated with the interconnection of the project to the larger grid. *See* Compl., at pp. 7, 37. Under this new prong of the Commission's LEO standard, a QF would only be required to request an interconnection agreement. Performance under specified deadlines of the Small Generator Interconnection Procedures of NorthWestern's Open Access Transmission Tariff would be expected of the utility, unless those deadlines were waived by the QF. Even if Plaintiffs were successful in their implementation challenge, they would be afforded a remedy no better than what the Commission is currently offering. A successful implementation challenge

leads to "a new rulemaking, a case-by-case adjudication, or other reasonable method" before a state commission that remedies the aspect of the state's PURPA implementation found unlawful. *Allco Renewable Energy, Ltd.*, 208 F. Supp. 3d at 401.

The Commission first indicated its desire to conduct rulemaking on the LEO standard at its October 5, 2017 work session, and invited interested individuals to petition the Commission with language for a proposed rulemaking. Order 7500d ¶¶ 13, 75 (citing Mont. Code Ann. § 2-4-315) (Compl., Ex. 7). The Commission is disappointed that, rather than taking up the Commission's offer for rulemaking, Plaintiffs have instead elected to file a federal district court challenge to the Commission's implementation of PURPA. A stay concerning the legitimate implementation challenge will ensure that the limited resources of the federal court system and the parties are preserved.

## FACTS

### I.     The Commission's Establishment of the *Whitehall Wind* LEO Standard

The challenged LEO standard was established in a lengthy proceeding involving Whitehall Wind, LLC ("Whitehall Wind"), which had petitioned the Commission to set rates and conditions for a PURPA contract between it and NorthWestern. After a contested proceeding, Whitehall Wind sought judicial review and eventually the case was remanded back to the Commission with the direction to consider the LEO issues raised. *Whitehall Wind LLC v. Montana*

*Public Service Comm.*, Cause No. DV-03-10080, 2008 Mont. Dist. LEXIS 842,

*10 n.30 (Mont. 5th Jud. Dist. Ct. 2008). After a contested remand proceeding, the

Commission issued Order 6444e establishing its LEO standard requiring three

conditions to establish an LEO:

1. A QF must tender an executed power purchase agreement to the utility with a price term consistent with the utility's avoided costs, with specified beginning and ending dates;

2. With sufficient guarantees to ensure performance during the term of the contract; and

3. An executed interconnection agreement.

Order 6444e ¶ 47 (Compl., Ex. 8). Noting that this new bright-line test would only

have prospective effect, the Commission examined Whitehall Wind's pending

petition under the "the totality of the circumstances to determine if the QF has

made an unconditional commitment to deliver energy, capacity or energy and

capacity." *Id.*, ¶ 49. The Commission found that Whitehall Wind had not incurred

an LEO because no site control had occurred and Whitehall "was merely seeking

information from which it could make a decision whether or not to proceed." *Id.*,

¶¶ 57–59.

Whitehall Wind sought judicial review in state court, arguing the

Commission had erred by finding the QF in question had not incurred an LEO. The

Montana Supreme Court upheld the Commission's decision noting the

"Commission's ruling in this case was *fact-specific*" and supported by substantial

evidence in the record. *Whitehall Wind, LLC v. Mont. Pub. Serv. Com.*, 2015 MT 119, ¶ 17, 379 Mont. 119, 347 P.3d 1273 (emphasis added). The Court "decline[d] to opine whether the Commission's bright-line prospective test, announced in its order, complies with PURPA." *Id.*, ¶ 18. Since announcing this LEO standard, both QFs and NorthWestern have used this bright-line test to negotiate with one another. As discussed below, the same standard was applied to the Plaintiffs in this case.

## II.    Plaintiffs' Opposition to the LEO Standard and Its Application to Them

NorthWestern has an Avoided Cost Tariff Schedule QF-1 for New Solar Qualifying Facilities with Nameplate Capacities 3 MW and less ("QF-1 Tariff"), on file with the Commission that sets the avoided cost rate for QFs that meet the size and fuel source requirements of the tariff. On May 3, 2017, around when the Plaintiffs were negotiating terms of QF-1 Tariff contracts with NorthWestern, NorthWestern filed an application to change the avoided cost rate, claiming the rate in the QF-1 Tariff no longer reflected its avoided cost. On May 17, 2016, NorthWestern filed a subsequent Motion for Emergency Suspension of the QF-1 Tariff due to a concern that the tariff's existing avoided cost rate well exceeded NorthWestern's true avoided cost and had made it so popular that ratepayers would be harmed, if it continued to sign contracts to purchase power under it.

The Commission approved NorthWestern's Motion for Emergency Suspension through a series of orders and Commission actions. Most notably, the Commission permitted NorthWestern to execute contracts with solar QFs greater than 100 kW, but no larger than 3 MW, at the existing QF-1 Tariff rate if the QF had met the interconnection prong of the LEO standard on or before June 16, 2016. Order 7500 at ¶ 47 (Compl., Ex. 3). Additionally, hearing the concerns expressed by certain QFs that they had requested interconnection agreements from NorthWestern, and that NorthWestern did not meet its legal obligation to provide interconnection agreements in a timely fashion, the Commission made a commitment to further investigate these allegations. *See* Order 7500c ¶ 5 (Compl., Ex. 6). FLS Energy, Inc. ("FLS") and Cypress Creek Renewables Development, LLC did not present a witness to address the issue of interconnection agreements at the Commission's January 18–19, 2017 hearing. *See* Final Order 7500c ¶ 85 (Compl., Ex. 6).

When the Commission issued its Final Order 7500c, it set a new lower avoided cost rate for all QFs at or below 3 MW of nameplate capacity and, after examining the record evidence, concluded that NorthWestern had not "unduly prevented QFs from obtaining interconnection agreements by unilaterally adopting time frames different from those in its tariff . . . ." *Id.* at ¶ 91. The Commission made this finding, in part, because the parties had failed to introduce any evidence

of NorthWestern's alleged action of unilaterally blocking the requests of QFs for interconnection agreements. *Id*; Order 7500d at ¶¶ 73–74 (Compl., Ex. 7). As a result of these rulings, the Plaintiffs were not eligible for the pre-existing avoided cost rate, but only the new rate.

While the Commission was engaged in the above proceeding concerning NorthWestern's QF-1 Tariff, FLS, which at the time was the upstream owner of the Plaintiffs' QFs, filed a petition pursuant to section 210(h)(2)(B) of PURPA requesting that FERC initiate an enforcement action against the Commission. *See FLS Energy* (Compl., Ex. 1). FLS requested that FERC issue three findings in addition to bringing an enforcement action:

1. "[T]hat the Montana Commission's [LEO] standard originally established in *Whitehall Wind,* and adopted here, violates PURPA;

2. "[T]hat the Montana Commission violated PURPA by improperly suspending the QF-1 Tariff Option l(a) Standard Rate for solar QFs between 100 kW and 3 MW."

3. "[T]hat North Western has improperly refused to comply with the timelines and study procedures set forth in section 3.5. 7 of Attachment N (Small Generation Interconnection Procedures) to its [open access transmission tariff] and refused to issue interconnection agreements to small solar QFs that have satisfied all the requirements of NorthWestern's Small Generation Interconnection Procedures."

*Id.* at PP 5–6. FERC declined to initiate an enforcement action, but did provide "further comment on the matters at issue." *Id.* at P 2. FERC only commented on the first requested finding, focusing exclusively on the executed interconnection

agreement prong of the *Whitehall Wind* LEO standard. FERC's view was that because the utility could "delay the facilities study and the tendering to the QF of an executable interconnection agreement, the requirement of an executed interconnection agreement imposed by the Montana Commission is no different than requiring a utility-signed contract," which FERC has previously found to be inconsistent with PURPA and its rules. *Id.* at P 26. During the course of this proceeding before FERC, the protesting parties argued that "FLS' claims against NorthWestern are 'as-applied' PURPA claims subject to Montana Commission jurisdiction and that this Commission lacks jurisdiction over those claims." *Id.* at P 12. In apparent recognition of this argument, FERC declined to issue requested findings (2) and (3), and issued no findings specific to a particular QF project.

During the course of adjudicating the QF-1 Tariff rate, the Commission became interested in modifying the *Whitehall Wind* LEO standard recognizing the executed interconnection agreement element "may be worthy of further analysis as a prong of a bright-line test." Order 7500d at ¶ 75 (Compl.. Ex. 7). The Commission invited "any interested person to initiate rulemaking to address these concerns." *Id.* (citing Mont. Code Ann. § 2-4-315). Prior to February 20, 2018, no interested party had petitioned the Commission to initiate rulemaking on the *Whitehall Wind* LEO standard. Thus, on February 20, 2018, the Commission voluntarily initiated a rulemaking. *See* Br. in Support of Mot. for Jud. Notice

(Doc. 28-2). The proposed rulemaking filed with the Montana Secretary of State on March 6, 2018, includes language removing the requirement for a signed interconnection agreement and instead requires, among other things, QFs to have submitted an interconnection request and to not have waived any deadlines contained within the Small Generation Interconnection Procedures. *Id.*, at p. 550–51.

## STANDARD FOR DISMISSAL

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for motions to dismiss for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001) (abrogated on other grounds by *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)).

Rule 12(b)(6) provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus,* 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. *Meek v. County of Riverside,* 183 F.3d 962, 965 (9th Cir.1999).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

## ARGUMENT

Plaintiffs raise both "as-applied" and implementation claims before this Court. The "as-applied" claims must be dismissed as discussed in Section I. Most egregiously, Plaintiffs not only seek a determination that LEOs were formed, they request this Court to grant a specific avoided cost rate to their projects. No federal court has provided this relief in an implementation challenge. As to the implementation claims, the Commission has already initiated rulemaking that includes proposed language responsive to FERC's concerns expressed in *FLS Energy*. (Compl., Ex. 1). Accordingly, this Court should grant a stay pending the outcome of this rulemaking. *See* Section II.

## I. Plaintiffs Improperly Raise "As-Applied" Claims in the Complaint

As discussed in the Introduction, Plaintiffs request this Court to find that the Plaintiffs' QFs satisfied a reasonable LEO standard by June 16, 2016 and that they thus are entitled to a $66/MWh avoided cost rate. *See* Compl., at pp. 7, 37–38. They ask the Court to order the Commission to allow the Plaintiffs to enter into contracts with NorthWestern at the avoided cost rates that existed prior to the suspension of the QF-1 Tariff. *Id.* at p. 36. These are inappropriate claims to raise in federal court under PURPA Section 210(h)(2)(B).

### A. "As-Applied" Versus Implementation Claims

PURPA itself established a regime of judicial review of certain claims by electric utilities and QFs against state regulatory authorities in Section 210(h)(2)(B). Under that subsection, electric utilities and QFs could first petition FERC for enforcement of subsection (f) of the same section by a state regulatory authority. If FERC declined to act, the QF or utility could bring an action in an appropriate U.S. district court to require the state regulatory authority to comply with the requirements of subsection (f), which require that states implement rules for QFs. Meanwhile Section 210(g) left non-implementation claims, known as "as-applied" claims, to the state courts. As discussed below, these statutory provisions provide the federal district courts exclusive jurisdiction to hear implementation claims and no jurisdiction over "as-applied" claims.

FERC first provided guidance describing the difference between implementation and "as-applied" challenges in a policy statement. *See Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Public Utility Regulatory Policies Act of 1978*, 23 FERC ¶ 61,304 (May 31, 1983). The courts have read PURPA's distinction between "as-applied" and implementation challenges in a similar manner. One federal district court explained that "[a]n implementation claim involves a contention that the state agency or nonregulated utility has failed to implement a lawful implementation plan under § 824a-3(f) of the PURPA . . . whereas an 'as-applied' claim involves a contention that the state agency's or nonregulated utility's implementation plan is unlawful, as it applies to or affects an individual petitioner." *Windway Techs. v. Midland Power Coop.*, No. C00-3089MWB, 2001 U.S. Dist. LEXIS 3430, at *17 (N.D. Iowa Mar. 5, 2001).

Federal courts routinely dismiss "as-applied" claims. "Cases interpreting the jurisdictional grant in § 210(h) of PURPA have distinguished between claims challenging the implementation of FERC/state agency regulations and claims challenging the application of such regulations." *Massachusetts Inst. of Tech. v. Massachusetts Dep't of Pub. Utilities*, 941 F. Supp. 233, 236 (D. Mass. 1996). In that case, the court found it lacked jurisdiction to hear an "as-applied" claim. *Id.* at 238. Another federal court explained that federal courts have a role in overseeing

that states have properly devised an implementation plan, but "[a]ny subsequent claim that a nonregulated utility has failed to adhere to its own implementation plan in its dealings with a particular qualifying facility must be bought in state court . . . ." *Greensboro Lumber Co. v. Georgia Power Co.,* 643 F. Supp. 1345, 1374 (N.D. Ga. 1986).

### 1. "As-Applied" Versus Implementation Precedent in LEO-Related Claims

Several federal and state courts have reviewed claims involving LEOs and have followed the legal precedent that "as-applied" claims belong only in state court and implementation claims belong only in federal court.

In *JD Wind 1, LLC v. Smitherman*, a federal district court largely accepted a QF's assertion that it presented an implementation challenge directed at a specific order issued by the Texas Public Utility Commission ("Texas PUC"). No. A-09-CA-917-SS, 2010 U.S. Dist. LEXIS 96535, at *19–21 (W.D. Tex. Sep. 14, 2010). The district court accepted most of the plaintiff's claims as implementation challenges because it believed the Texas PUC's decision to deny that particular QF an LEO based on the QF's status as an intermittent generation source "is not limited in its effect to only [the QF], but instead is a failure to lawfully implement PURPA and the FERC regulations." *Id.* at *20. The Court of Appeals for the Fifth Circuit disagreed in part and overturned the federal district court's decision that all the surviving claims were implementation claims. *Exelon Wind 1, L.L.C. v. Nelson,*

766 F.3d 380 (5th Cir. 2014). In *Exelon Wind 1*, the Fifth Circuit found that some of the plaintiffs' challenges focused "on the specific PUC Order, rather than PUC Rule 25.242." 766 F.3d at 390. The Fifth Circuit found the Texas PUC had "declined to create a categorical rule preventing wind generators from forming [LEOs] and instead issued an order limited to only Exelon's capacity to produce firm power." *Id.* As a result, the Fifth Circuit concluded that plaintiffs had brought an "as-applied" challenge, except for those claims exclusively challenging the LEO standard contained in Tex. PUC Rule 25.242. *Id.* at 393–400.

In *Power Resource Group, Inc. v. Klein*, a QF requested the following forms of relief in challenging the Texas PUC's LEO standard: (1) a declaration that the PUC had failed to implement the requirements of PURPA; (2) a declaration that the Texas PUC's actions with respect to the QF violated PURPA; and (3) injunctive relief requiring the Texas PUC to implement new LEO regulations, and then requiring the Texas PUC to consider the QF petition under that new regulatory framework. No. A-03-CA-762-H, 2004 U.S. Dist. LEXIS 28820, at *23-24 (W.D. Tex. Feb. 18, 2004). The district court dismissed all of the QF's claims except the claims focusing exclusively on Texas PUC Rule 25.242, which set forth the LEO standard. *Id.* The Fifth Circuit upheld the district court's decision as to the lawfulness of the LEO standard issue and thus did not address whether the

"as-applied" claims were properly dismissed. *Power Res. Grp., Inc. v. Tex. PUC*, 422 F.3d at 239.

Where QFs have complained about the individual application of an LEO standard to it, state courts have heard such matters.[5] *See South River Power Partners, L.P. v. Penn. Pub. Util. Comm'n*, 696 A.2d 926 (Pa. Commw. Ct. 1997). *Publ. Service Company of Oklahoma v. Okla. Corp. Comm'n*, 115 P.3d 861, 872 (Okla. 2005). The Montana Supreme Court has already reviewed the application of the Commission's LEO standard, affirming the Commission's finding that Whitehall Wind had not incurred an LEO based on the record evidence in that contested case proceeding. *Whitehall Wind, LLC v. Mont. Pub. Serv. Comm'n*, 2015 MT 119, ¶ 17 379 Mont. 119, 347 P.3d 1273 (2015). The court made its decision in that case by examining the individual attributes of the QF. *Id.* The court "decline[d] to opine whether the Commission's bright-line prospective test, announced in its order, complies with PURPA." *Id.* at ¶ 18. This approach is consistent with the jurisdictional divide between state and federal courts in enforcing the substance of PURPA. *Allco Renewable Energy, Ltd.*, 875 F.3d at 68.

_____

[5] If Plaintiffs chose to seek relief state court under MAPA, their claims would likely be precluded for failure to present a witness to address the issue of interconnection agreements at the Commission's January 18–19, 2017 hearing. *See* Final Order 7500c ¶ 85 (Compl., Ex. 6); *see also* Mont. Code Ann. § 2-4-702(1)(a) (only persons who have exhausted all administrative remedies are entitled to judicial review).

The position that certain of the Plaintiffs' claims are "as-applied" also is fully supported by FERC's reaction to the Plaintiffs' Enforcement Petition. Plaintiffs asked FERC to make findings specific to their projects. *FLS Energy* at PP 5–6 (Compl., Ex. 1). Plaintiffs requested FERC find "the Montana Commission violated PURPA by improperly suspending the QF-1 Tariff Option l(a) Standard Rate for solar QFs between 100 kW and 3 MW." *Id.* at P 5. The protesting parties argued that petitioners had improperly raised "as-applied" challenges before FERC. *Id.* at P 12. FERC only issued a non-binding declaration as to the Commission's LEO standard: "[FERC] hereby finds that the Montana Commission's [LEO] standard is inconsistent with PURPA and the Commission's PURPA regulations." *Id.* at P 23 (FERC Ordering (b)). FERC, in contrast, made no findings related to suspending the QF-1 Tariff.

## 2. The "As-Applied" and Implementation Distinction Limits Relief that Can Be Provided by the Federal Court System

Because of this jurisdictional divide between "as-applied" and implementation claims, even where legitimate implementation claims are raised, courts have routinely declined to provide plaintiffs making implementation claims relief that would cross into the realm of applying such determinations to particular QFs. In *Winding Creek Solar LLC v. Peevey*, a QF successfully brought an implementation challenge to one of California's PURPA programs. 2017 U.S. Dist. LEXIS 201893 (N.D. Cal. Dec. 6, 2017). Despite finding fault in the California

PUC's implementation of the PURPA program, the federal district court declined to implement a specific avoided cost rate of $89.23/MWh for the QF, stating "[t]hat goes too far. . . . the request for a specific contract at a specific price is an 'as-applied' challenge that does not belong in this forum." *Id.* at *36–37. Similarly, a Texas district court found that a QF requesting the court to hear "claims *under a revised system of regulation*—one conforming to PURPA" was inappropriate because "[t]hese allegations state an 'as applied' claim, which this Court has no jurisdiction to hear." *Power Res. Grp., Inc.*, 2004 U.S. Dist. LEXIS 28820 at *23 (emphasis added).

In *Allco Renewable Energy Ltd.*, a federal district court found the Massachusetts Department of Public Utilities ("MDPU") had failed to implement PURPA's requirement to provide a sufficiently fixed avoided cost calculation at the outset of the QF's LEO. 208 F. Supp. 3d at 390. In making this finding, the Court again declined to arrive at a specific avoided cost calculation: "Allco requests that this Court engage in fact finding to determine the proper avoided cost rate. Nothing in the statutory scheme provides this Court with rate-making authority, and it lacks the expertise to do so." *Id.* at 401. The court found that the "MDPU has the statutory authority to revisit its implementation of FERC's rules, either through a new rulemaking, a case-by-case adjudication, or other reasonable method." *Id.* at 393.

### 3. The Facts Here Demonstrate Two Separate Claims Are Being Made

Here, Plaintiffs challenge the Commission's *Whitehall Wind* LEO standard in Part A of its Prayer for Relief and the first clause of Part B. *See* Complaint at pp. 36–37. Akin to the QFs' challenges in *Exelon Wind 1* and *Power Res. Grp., Inc.* focusing exclusively on Texas PUC Rule 25.242, these portions of Plaintiffs' Prayer for Relief are a proper implementation challenge of the Commission's *Whitehall Wind* LEO standard.

Plaintiffs also request this Court provide permanent injunctive relief directing Defendant to provide their projects a contract at a rate of approximately $66/MWh. Compl., at pp. 37–38. Plaintiffs are requesting this Court hear their claims under a revised system of regulation, and then apply that new standard to Plaintiffs' projects so that those projects can qualify for the $66/MWh rate available in the standard QF-1 Tariff that existed on or before June 16, 2016. Compl. at pp. 36–38. These are "as-applied" claims and are not appropriately before this Court. Indeed, the Complaint includes numerous details as to the facts of the Plaintiffs' particular situation, which are entirely extraneous to the question within the Court's jurisdiction. *See* Compl. at pp. 15–20 (describing negotiations between Plaintiffs and NorthWestern), 25–28 (describing the *QF-1* proceeding and implying Plaintiffs' due process right had been violated), 30–31 (describing the Commission's application of its LEO test to the factual circumstances surrounding

Plaintiffs), 30–35 (arguing the Commission had demonstrated a bias against the solar industry by citing to facts both within and outside of the administrative record).The standards for judicial review available within MAPA provides potential relief for these claims. *See* Mont. Code Ann. § 2-4-704.

## II.   The Remaining Claim—the Implementation Claim—Should Be Stayed

The Commission has initiated a rulemaking responsive to the concerns expressed by FERC in *FLS Energy*. The proposed rulemaking removes the requirement in the interconnection element that a QF have a signed interconnection agreement to incur an LEO. Instead, a QF must have submitted an interconnection request and not waived any deadlines under the Small Generation Interconnection Procedures. Accordingly, the Commission respectfully requests this Court stay Plaintiffs' implementation claim pending the outcome of the Commission's rulemaking on this matter.

### A.   The Standard for a Stay

This Court has the discretion to stay a matter before it under its authority to control its docket and the cases before it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936). In *Landis,* the Supreme Court provided the guidance for courts considering motions for stay orders and observed that the analysis requires balancing the benefits of a stay with any hardship a stay may impose: "[A party seeking] a stay must make out a clear case of hardship or

inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis,* 299 U.S. at 255.

Focusing immediately on the balancing of hardships, if this litigation is permitted to move forward, the Commission faces the burdens and expenses of defending expensive federal litigation while at the same time conducting a rulemaking that could moot Plaintiffs' implementation challenge. The Commission is a state agency with limited resources and staying this proceeding would allow the Commission to focus on more productive endeavors like the ongoing LEO rulemaking. Plaintiffs would be able to participate in this rulemaking and raise the substantive concerns expressed in this Complaint. Accordingly, the hardships to the Commission would be considerable if this litigation moves forward and minimal to Plaintiffs if this litigation is stayed.

The Ninth Circuit has refined the *Landis* standard, identifying the following factors that courts should consider:

(1)     Stays should not be indefinite in nature and should not be granted unless it appears likely the other proceeding will be concluded within a reasonable time;

(2)     Courts more appropriately enter stay orders where a party seeks only damages, does not allege continuing harm, and does not seek injunctive or declaratory relief since a stay would result only in delay in monetary recovery;

(3)     Stays may be appropriate if resolution of issues in the other proceeding would assist in resolving the proceeding sought to be stayed; [and]

(4)     Stays may be appropriate for courts' docket efficiency and fairness to the parties pending resolution of independent proceedings that bear upon the case.

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110–11 (9th Cir. 2005); *see also Lair v. Murry*, 871 F. Supp. 2d 1058, 1068 (D. Mont. 2012) (a summary from this Court of the four factors used in considering whether to stay a proceeding).

### 1.     The timeframe under MAPA for a rulemaking is definite and limited.

The Plaintiffs and this Court can be assured that the stay will not be indefinite. The Commission submitted its proposed rulemaking to the Montana Secretary of State on March 6, 2018. That proposed rulemaking will be noticed in the Montana Administrative Register ten days later on March 16, 2018.[6] Agencies "shall afford interested persons at least 20 days' notice of a hearing and at least 28 days from the day of the original notice to submit data, views, or arguments, orally or in writing." Mont. Code Ann. § 2-4-302(4). Once a proposed rulemaking has been noticed, the state agency must complete the proposed rulemaking

---

[6] *See* Mont. Sec. of State 2018 Filing Deadlines, Issue 5, *available at* <http://sos.mt.gov/arm/calendar>.

between 30 days and six months. *Id.* § 2-4-302(3). Consistent with these procedural requirements, the Commission has implemented the following procedural schedule for this rulemaking:

- March 6, 2018: Proposed rulemaking submitted to the Montana Secretary of State.

- March 16, 2018: Proposed rulemaking noticed in the Montana Administrative Register.

- April 9, 2018: Public hearing to consider the proposed adoption of the above stated rules.

- April 25, 2018: Deadline for interested persons to submit data, views, or arguments, orally or in writing.

- September 16, 2018: Deadline under MAPA for the Commission to finalize its rulemaking on this matter. *See* Mont. Code Ann. § 2-4-302(3).

The Commission will strive to complete this rulemaking in May 2018 and definitely before the September 16, 2018 deadline. Given that this Court will have to rule on this Partial Motion to Dismiss and Motion for Stay, there is a distinct possibility the Commission will have completed the rulemaking before this Court and the parties even have an opportunity to advance to the merits of Plaintiffs' implementation challenge. Due to this ordering of decision making, the likelihood that Plaintiffs would suffer any hardship under such a limited stay is minimal.

## 2. The relief available in an implementation challenge ameliorates towards granting a stay.

Although the second factor indicates that stays are less favored when injunctive relief is requested, that factor does not doom this request for a stay. As mentioned above, the relief provided by a PURPA implementation challenge is direction from a federal court for a state to modify its implementation of PURPA. *Winding Creek Solar LLC*, 2017 U.S. Dist. LEXIS 201893, at *36–37; *Allco Renewable Energy Ltd.*, 208 F. Supp. 3d at 397, 401; *Power Res. Grp., Inc.*, 2004 U.S. Dist. LEXIS 28820, at *23. The Commission is already engaged in this process regarding its LEO standard. Due to this limited form of relief available to Plaintiffs, they will not suffer any continued harm as a result of this Court granting a stay pending this rulemaking.

## 3. The pending rulemaking has the potential to moot Plaintiffs' implementation challenge.

Plaintiffs' implementation challenge largely reflects the guidance provided by FERC in *FLS Energy*. Compl. at pp. 5, 27–29. FERC stated the interconnection agreement requirement of the *Whitehall Wind* standard could allow the utility to "delay the facilities study and the tendering to the QF of an executable interconnection agreement," and is thus "no different than requiring a utility-signed contract before the QF can establish a legally enforceable obligation . . . ." *FLS Energy,* at PP 25–26 (Compl., Ex. 1).

The Commission's proposed rulemaking removes any control that a utility might be able to assert over the interconnection process. Rather than requiring a signed interconnection agreement, the proposed rulemaking only requires an interconnection application be submitted to the utility and that the QF has not waived any deadline under the Small Generation Interconnection Procedures. Modifying the Commission's LEO standard in this regard is responsive to FERC's guidance in *FLS Energy* (Compl., Ex. 1). Of course, notice and comment rulemaking requires the Commission be flexible in adopting new language for an LEO standard and the final rule might adopt something different than what the Commission has initially proposed. The Commission's initial actions, however, show that there is a distinct possibility that Plaintiffs' implementation challenges will be mooted in a reasonable amount of time.

### 4. A stay of this litigation would promote efficiency and fairness.

The Commission has taken a proactive role by initiating this rulemaking. PURPA is a policy of cooperative federalism. *FERC v. Mississippi*, 456 U.S. 742, 766–68 (1982); *Printz v. United States*, 521 U.S. 898, 928–29 (1997). Ideally, state commissions are permitted to carry out their duties under PURPA with limited interference. *See, e.g., Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*, 159 F.3d 129, 135 (3d Cir. 1998) ("Given the substantial role given state utility agencies by Congress in enacting PURPA, we conclude Congress did not

intend to prevent application of common law rules of preclusion."). After the federal government has ensured that implementation is achieved, the primary check on state commission decision-making is provided through review in state courts. *Allco Renewable Energy, Ltd.*, 875 F.3d at 68. It is notable that the Commission's *Whitehall Wind* LEO standard had stood unchallenged in federal court since 2010. Now, that standard is subject to an implementation challenge.

Rather than stubbornly insist on a continued use of an LEO standard that has become a source of concern, the Commission has engaged in a process responsive to FERC's concerns with its interconnection agreement requirement, while at the same time making needed clarifications to the rule. Rulemaking before the Commission is efficient both to this Court and the parties in this proceeding because it presupposes one form of relief that might eventually become available to the Plaintiffs. This process allows the parties to participate in one rulemaking procedure instead of lengthy federal court litigation followed by the same type of rulemaking process. One rulemaking proceeding is obviously more efficient than the same rulemaking combined with an implementation challenge in federal court.

## CONCLUSION

The Commission respectfully requests this Court dismiss Plaintiffs' "as-applied" challenges, stay Plaintiffs' implementation challenge, dismiss Cypress Creek Renewables Development, LLC as a Plaintiff, and the Commission be

permitted to file an answer, within fourteen days after the Court's resolution of the

Commission's Motion, in the event the Plaintiff's entire Complaint is not

dismissed or stayed.

Respectfully submitted this 13th day of March, 2018.

_/s/ Jeremiah Langston_
Jeremiah Langston
Montana Public Service Commission
P.O. Box 202601
Helena, MT 59620-2601
(406) 444-6376
jlangston@mt.gov

**CERTIFICATE OF SERVICE**

I certify that, on the 13th day of March, 2018, I filed the foregoing electronically with the Clerk of Court for the U.S. District Court for the District of Montana, Helena Division, using the CM/ECF system, which will then send notification of such filing (NEF) to the attorneys of record in this matter.

    */s/ Jeremiah Langston*
Jeremiah Langston
Montana Public Service Commission
P.O. Box 202601
Helena, MT 59620-2601
(406) 444-6178
jlangston@mt.gov

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to D. Mont. L.R. 7.1(d)(2), the foregoing Montana Public Service Commission's Brief in Support of Partial Motion to Dismiss and Motion for Stay contains 6,500 words, excluding the parts of the brief exempted by rule. This brief has been prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman 14-point font.

DATED this 13th day of March, 2018.

*/s/ Jeremiah Langston*
Jeremiah Langston
Montana Public Service Commission
P.O. Box 202601
Helena, MT 59620-2601
(406) 444-6178
jlangston@mt.gov