**FILED**

NOV 2 9 2018

Clerk, U.S. District Court
District Of Montana
Helena

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BEAR GULCH SOLAR, LLC, et al., | CV-18-6-H-CCL |
| Plaintiffs, | |
| vs. | OPINION & ORDER |
| MONTANA PUBLIC SERVICE COMMISSION, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' Motion for Summary Judgment. (Doc. No. 35) and Defendants' Cross-Motion for Summary Judgment (Doc. No. 60). The motions were argued on October 16, 2018. Jennifer Selendy of Selendy & Gay PLLC argued for Plaintiffs. She was accompanied by Steve Levitas of Plaintiff Cypress Creek Renewables Development, by Daniel P. Mach of Quinn Emmanuel Urquhart & Sullivan, LLP, and by Brianne C. McClafferty of Holland & Hart LLP. Phillip J. Roselli of Wilkinson Barker Knauer LLP argued for Defendants.

He was accompanied by Justin Kraske, Chief Legal Counsel for the Montana Public Service Commission and Defendant Commissioner Roger Koopman.

## PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint against the Montana Public Service Commission and Commissioners Bob Lake, Travis Kavulla, Brad Johnson, Roger Koopman, and Tony O'Donnell in their official capacity (collectively MPSC or Montana Commission) on January 12, 2018. Plaintiffs claim that the Montana Commission has violated Section 210 of the Public Utility Regulatory Policies Act (PURPA), 16 U.S.C. § 824a-3 and regulations enacted by the Federal Energy Regulatory Commission (FERC or the Commission).

On March 13, 2018, the MPSC filed a motion to stay the proceeding pending their ongoing rulemaking and to dismiss Plaintiffs' "as-applied" challenge for lack of subject matter jurisdiction and failure to state a claim. (Doc. 29). On April 19, 2018, Plaintiffs filed their motion for summary judgment. (Doc. 35). Rather than responding to the motion for summary judgment, the Montana Commission filed a motion to hold the summary judgment motion in abeyance until the Court ruled on the MPSC's motion to stay and motion to partially dismiss

Plaintiffs' complaint. The Court set a hearing on the MPSC's motions for June 4, 2018.

On June 5, 2018, the Court issued its order denying Defendants' partial motion to dismiss and motion to stay. The Court held that Plaintiffs' complaint pled an implementation claim pursuant to PURPA sufficient to give the Court subject matter jurisdiction. The Court denied the MPSC's motion to stay the proceedings while the MPSC completed a new rulemaking process, noting that the MPSC could have begun its amendment process as early as January of 2017, after the Federal Energy Regulatory Commission issued its declaratory order on December 15, 2016. The Court also denied the MPSC's Motion to Hold in Abeyance Plaintiffs' Motion for Summary Judgment and set a briefing schedule requiring the MPSC to file its answer, response to Plaintiffs' summary judgment motion, and any cross-motion for summary judgment on or before June 27, 2018. The MPSC's reply brief on its cross-motion for summary judgment was filed on August 1, 2018. The Court has reviewed the parties' briefs and received argument and is prepared to rule.

**STANDARD OF REVIEW**

Fed.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Summary judgment or adjudication is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir.1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 586, n. 11.

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. Fed.R.Civ.P. 56(a), (c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences from the facts must be drawn in favor of the opposing party. *Anderson,* 477 U.S. at 255.

The moving party, in supporting its burden of production, "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (9th Cir.2000). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire,* 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.

Once the moving party has met its initial burden, the burden shifts to the

non-moving party to establish the existence of a general issue of material fact.

*Matsushita,* 475 U .S. at 586 – 87. The non-moving party may not rely on the

allegations or denials of its pleadings but must cite to facts in the record. Fed. R.

Civ. P. 56(c)(1); *Matsushita,* 475 U.S. at 586, n. 11. When a party fails to

properly address another party's assertion of fact by citing to the record, as the

MPSC did in this case by citing to its own answer, the Court may consider the fact

undisputed for purposes of the moving party's motion for summary judgment.

Fed. R. Civ. P. 56(e)(2).

## STATEMENT OF FACTS[1]

1. Plaintiffs Bear Gulch Solar, LLC, Canyon Creek Solar, LLC, Couch Solar, LLC, Fox Farm Solar, LLC, Glass Solar, LLC, Malt Solar, LLC, Martin Solar, LLC, Middle Solar, LLC, River Solar, LLC, Sage Creek Solar, LLC, Sypes Canyon Solar, LLC, Valley View Solar, LLC, and Ulm Solar, LLC (collectively, QF Plaintiffs) are each a "qualifying facility" under PURPA and Federal Energy Regulatory Commission (FERC) regulations. (Doc. 65 at ¶ 1).

---

[1] Many of these facts are taken from Plaintiffs' Reply to Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts. (Doc. 65). Plaintiffs correctly point out that at this stage in the proceedings, Defendants cannot rely on "lack of knowledge" to refute properly supported factual assertions. Plaintiffs filed their Rule 56.1 Statement of Undisputed Material Facts on April 19, 2018, and the Court gave Defendants until June 27, 2018, to file their response. (Doc. 51).

2.  Plaintiff Cypress Creek Renewables Development, LLC (Cypress Creek) is an affiliate of each QF Plaintiff and is the successor-in-interest to FLS Energy, which formerly operated QF Plaintiffs. (Doc. 65 at ¶ 5).

3.  Defendant Montana Public Service Commission is an agency of the state of Montana that regulates matters of electrical generation, distribution, and sales within the state and is charged with implementing FERC regulations under PURPA. (Doc 65 at ¶¶ 7 - 8).

4.  Defendants Brad Johnson, Travis Kavulla, Tony O'Donnell, Roger Koopman, and Bob Lake are MPSC Commissioners. (Doc. 65 at ¶ 9).

5.  NorthWestern Energy is an electric utility regulated by the MPSC. (Doc. 68 at ¶ 3).

6.  Each QF Plaintiff is developing a solar photovoltaic project within the service area of NorthWestern Energy in Montana with a nameplate capacity greater than 100 kilowatts and less than 3 megawatts. (Doc. 65 at ¶ 2).

7.  As a solar generator with a capacity of 3 megawatts or less, each QF Plaintiff is eligible for Option 1(a) of the Schedule QF-1 Tariff offered by NorthWestern and approved, as revised from time to time, by the MPSC. (Doc. 65 at ¶ 3).

8.  From October 2015 until June 16, 2016, the avoided-cost rate at which Montana's QFs were entitled to sell power to NorthWestern Energy under Option 1(a) of the Schedule QF-1 Tariff was $92.73 per megawatt-hour in peak hours and $53.14 per megawatt-hour in off-peak hours (the Prior QF-1 Tariff). The Option 1(a) blended rate under the Prior QF-1 Tariff was roughly $66 per megawatt-hour. (Doc. 68 at ¶ 4).

9.    In reliance on the Prior QF-1 Tariff, FLS Energy expended
      approximately $750,000 to develop new solar QFs throughout
      Montana. (Doc. 65 at ¶ 12).

10.   In the first half of 2016, FLS Energy began negotiating with
      NorthWestern Energy to execute power purchase agreements
      pursuant to which each QF would sell power to NorthWestern Energy
      at prices set by Option 1(a) of the Prior QF-1 Tariff. (Doc. 65 at
      ¶ 13).

11.   By early May of 2016, FLS Energy and NorthWest Energy had nearly
      completed their negotiation concerning the power purchase
      agreements. (Doc. 32-1, May Decl., at ¶ 10).

12.   On May 13, 2016, the MPSC issued a "Notice of Application and
      Intervention Deadline" in Docket No. (Dkt.) D2016.5.39 in response
      to NorthWestern Energy's May 3, 2016, filing of an "Application for
      Approval of Avoided Cost Tariff Schedule QF-1." (MPSC docket
      information for Dkt. D2016.5.39 is available on the MPSC's
      website).

13.   NorthWestern Energy confirmed with FLS Energy that the new rates
      proposed in its May 3, 2016, application would not take effect for
      several months even on an interim basis and continued to assure FLS
      Energy of its intention to execute PPAs with the other QF Plaintiffs at
      the Prior QF-1 Tariff rates. (Doc. 32-1, May Decl., at ¶ 10).

14.   On May 17, 2016, NorthWestern Energy filed a "Motion for
      Emergency Suspension of the QF-1 Tariff for New Solar Qualifying
      Facilities with Nameplate Capacities Greater than 100 KW" in MPSC
      Dkt. D2016.5.39. (Doc. 38, Selendy Decl. at ¶ 4; Doc. 38-3).

15. In its May 24, 2016, Notice of NorthWestern Energy's emergency motion, the MPSC indicated that a hearing on the motion was tentatively scheduled for June 9, 2016. (Doc. 57-1).

16. Shortly after June 2, 2016, FLS Energy and NorthWestern Energy finalized their agreement as to the terms of the power purchase agreement to be signed by the parties. (Doc. 32-1 at ¶ 11).

17. The power purchase agreements tendered by the QF Plaintiffs included fully negotiated agreements on all materials terms of the deals to sell energy to NorthWestern Energy. (Doc. 65 at ¶ 16).[2]

18. On June 7, 2016, the MPSC issued the Notice confirming that the hearing would be held on June 9, 2016.

19. On June 8, 2016, FLS Energy filed a petition to intervene in the "Application of NorthWestern for Interim and Final Approval of Revised Tariff QF-1." (Doc. 65 at ¶ 27).

20. By June 16, 2016, each QF Plaintiff had executed the power purchase agreement that had been agreed to by NorthWestern Energy and FSL Energy and tendered those executed agreements to NorthWestern Energy. (Doc. 32-1, May Decl., at ¶ 11).

21. On June 16, 2016, the MPSC issued its Notice of Commission Action stating that the MPSC voted to grant NorthWestern Energy's motion and to suspend its obligation under QF-1 tariff option 1(a) standard

---

[2]  Plaintiffs correctly point out that the MPSC cannot rely on its answer to dispute their properly supported factual assertion. Plaintiffs rely on an admission made by counsel for NorthWest Energy during a June 9, 2016, hearing before the MPSC (Doc. 38-6) to support their assertion. MPSC staff and four of the current commissioners were present at that hearing and should certainly be aware of the statements made there. The Court therefore accepts this fact as undisputed.

rates for solar projects greater than 100 kW pending issuance of a final order. The Notice explicitly authorized NorthWestern to execute contracts with solar QFs greater than 100 kW but no larger than 3 MW at the standard tariff rate, if prior to the date of this notice, the QF had submitted a signed power purchase agreement and executed an interconnection agreement. (Doc. 1-2).

22.     On July 25, 2016, the MPSC issued Order 7500 in Dkt. D2016.5.39, confirming the suspension of Option l(a) rates under the Prior QF-1 Tariff for solar QFs with nameplate capacity between 100 kW and 3MW. (Doc. 1-3).[3]

23.     Order 7500 included a "safe harbor" stating that QFs "that had submitted a signed (by the QF) PPA and had signed a final Small Generator Interconnection Agreement on or before June 16, 2016" were exempt from the June 16, 2016 suspension of the Prior QF-1 Tariff. This clause uses the *Whitehall Wind* standard. (Doc. 65 at ¶¶ 52 - 53).

24.     The *Whitehall Wind* standard was established in 2010 and was used by the MPSC to determine  whether there is a Legally Enforceable Obligation ("LEO") under PURPA, until it was replaced in 2018. (Doc. 68 at ¶ 12).

25.     NorthWestern Energy is not required to provide an interconnection agreement to a QF until a facilities study has been completed. (Doc. 65 at ¶ 48).

26.     None of the Plaintiffs had satisfied the *Whitehall Wind* LEO standard as of June 16, 2016. (Doc. 68 at ¶ 13).

---

[3]  Commissioner Kavulla wrote a comprehensive and penetrating dissent to Order 7500. While that dissent was not mentioned by either party during oral argument, it was included in the record and demonstrates that not all of the Commissioners were satisfied with Order 7500.

27. On August 4, 2016, FLS Energy filed a motion for reconsideration of Order 7500, which was denied by operation of law on August 14, 2016. (Doc. 65 at ¶ 54).

28. On October 17, 2016, FLS Energy filed a petition with FERC under PURPA. (Doc. 65 at ¶ 56).

29. On December 15, 2016, FERC issued a "Notice of Intent Not to Act and Declaratory Order." (Doc. 1-1)

30. FERC found the MPSC's LEO standard inconsistent with PURPA and FERC regulations. (Doc. 1-1).

31. On February 10, 2017, FLS Energy and Cypress Creek Renewables, LLC asked the MPSC to modify Order 7500's safe harbor in light of FERC's Declaratory Order. (Doc. 65 at ¶ 61).

32. On July 21, 2017, the MPSC issued its final order (Order No. 7500c) in Dkt. D2016.5.39. (Doc. 1-6).

33. On November 24, 2017, in response to requests for reconsideration of Order 7500c, the MPSC issued an order on reconsideration. Among other things, Order No. 7500d extended the maximum contract length in the QF-1 tariff to 15 years. Pursuant to Order 7500d, standard rates were established for a 15-year contract term for solar QFs at $37.26/MWh in peak hours and $28.14/MWh for off-peak hours. This resulted in a blended rate of approximately $31/MWh. (Doc. 68 at ¶ 6; Doc. 1-7).

34. In Order No. 7500d, the MPSC stated: "FERC's declaratory order is advisory only and is non-binding unless and until it is upheld by a federal district court. The Commission may decide to re-evaluate the LEO test in a future proceeding, based on FERC's guidance." (Doc. 1-7 at ¶ 107).

35. The MPSC then relied on the *Whitehall Wind* test in the proceeding before it, claiming the test was fair and reasonable. (Doc. 1-7 at ¶ 107).

36. Plaintiffs filed their complaint on January 12, 2018. (Doc. 1).

37. On March 6, 2018, the MPSC published a "Notice of Public Hearing on Proposed Adoption and Amendment" on its website notifying the public of its plan to adopt new rules, including a new proposed rule intended to refine the Legally Enforceable Obligation (LEO) "standard set forth in *Whitehall Wind LLC*, Docket D2002.8.100." (Doc. 28-2 at 3).

38. On March 13, 2018, the MPSC filed a motion to stay the proceeding pending their ongoing rulemaking and to dismiss Plaintiffs' "as-applied" challenge for lack of subject matter jurisdiction and failure to state a claim. (Doc. 29).

39. On April 19, 2018, Plaintiffs filed their motion for summary judgment. (Doc. 35).

40. Rather than responding to the motion for summary judgment, the MPSC filed a motion to hold the summary judgment motion in abeyance until the Court ruled on the MPSC's motion to stay and motion to partially dismiss Plaintiffs' complaint. (Doc. 41 filed May 3, 2018).

41. On June 5, 2018, the Court issued its order denying Defendants' partial motion to dismiss and motion to stay. The Court held that Plaintiffs' complaint pled an implementation claim pursuant to PURPA sufficient to give the Court subject matter jurisdiction. The Court denied the MPSC's motion to stay the proceedings while the MPSC completed a new rulemaking process, noting that the MPSC

could have begun its amendment process as early as January, 2017, after the Federal Energy Regulatory Commission issued its declaratory order on December 15, 2016.

42. On June 26, 2018, the Montana Commission finalized a Rulemaking Adoption Notice and the accompanying Administrative Order and filed it with the Secretary of State. (Doc. 68 at ¶ 16).

43. The new LEO rule applies prospectively only and does not apply retroactively to the question of which QFs established LEOs on or before June 16, 2016, entitling them to the Prior QF-1 Tariff rate. (Doc. 65 at 40, ¶¶ 70 - 71).

## DISCUSSION AND ANALYSIS

### A.    MPSC's Motion for Summary Judgment as to Plaintiffs' Request for Declaratory Judgment

Plaintiffs brought this case in this Court as a private enforcement action under PURPA against the Montana Commission. "With respect to private enforcement, PURPA's enforcement scheme contemplates two types of private action against a state utility regulatory agency: 'implemenation' challenges and 'as-applied' challenges." *Allco Renewable Energy Lmtd v. Massachusetts Electric Co.*, 875 F.3d 64, 68 (1st Cir. 2017). "Federal courts have exclusive jurisdiction over implementation challenges, while state courts have exclusive jurisdiction over as-applied challenges." *Exelon Wind 1 LLC v. Nelson,* 766 F.3d 380, 388 (5th

Cir. 2014) The parties disagree as to whether Plaintiffs' claim qualifies as a challenge to the Montana Commission's implementation of PURPA or the FERC regulations or should be characterized as an "as-applied" claim.

The Court begins its analysis of the MPSC's motion for summary judgment with the allegations of Plaintiffs' original complaint. (Doc. 1). In their single claim for relief, Plaintiffs allege that MPSC Order 7500 (and subsequent Orders 7500a-d) are inconsistent with and violate Plaintiffs' rights as QFs under PURPA and FERC's regulations. (Doc. 1 at 36, ¶ 80). In Part A of their prayer for relief, Plaintiffs seek a declaratory judgment consistent with FERC's December 2016 ruling in *In re FLS Energy, Inc. et al*, 157 FERC P 61211 (F.E.R.C.), 2016 WL 7381091. In clause 1 of Part B of their prayer for relief, Plaintiffs seek a permanent injunction "directing Defendants to implement PURPA in a lawful manner by adopting a standard for establishment of a Legally Enforceable Obligation that is consistent with PURPA, FERC's December 2016 ruling, and this court's declaratory orders . . . ." (Doc. 1 at 37). In clause 2 of Part B of their claim for relief, Plaintiffs seek a permanent injunction "directing Defendants to allow any QFs that satisfied that standard on or before June 16, 2016, including

the QF Plaintiffs, to contract with and sell their output to NorthWestern under the Prior QF-1 Tariff's avoided-cost rate of approximately $66/MWhr." (Doc. 1 at 37 - 38). In Part C of their prayer for relief, Plaintiffs seek "attorneys' fees, costs, and interest" to the extent available under law and equity. (Doc. 1 at 38).

The MPSC conceded in its Brief in Support of Its Partial Motion to Dismiss and Motion for Stay that the relief sought by Plaintiffs in Part A and the first clause of Part B of its Prayer for Relief constitutes a "proper implementation challenge of the Commission's *Whitehall Wind* LEO standard." (Doc. 30 at 28). Although the MPSC acknowledged during oral argument that the Court has jurisdiction to decide whether the *Whitehall Wind* standard complies with PURPA, (doc. 78 at 12), the MPSC argues that the *Whitehall Wind* standard no longer exists, mooting Plaintiffs' request for declaratory relief. (Doc. 61 at 13).

Plaintiffs respond that the MPSC's recently completed rulemaking did not moot their case because the MPSC did not "revise Order 7500's flawed safe harbor provision" and instead "adopted a *prospective* rule offering no remedy for those QFs who were denied the appropriate Prior QF-1 Tariff rate. . . ." (Doc. 67 at 25)(emphasis in original). Plaintiffs argue that the MPSC violated PURPA by

including a flawed LEO standard (the *Whitehall Wind* standard) in Order 7500 and are continuing to violate PURPA by applying the unlawful *Whitehall Wind* standard to an entire class of QFs. *Id.*

"The party asserting mootness bears a 'heavy' burden: a case is not moot if *any* effective relief may be granted." *Karuk Tribe of California v. United States Forest Service*, 681 F.3d 1006, 1017 (9th Cir. 2012)(en banc). A plaintiff can overcome mootness by showing that the action it challenges falls "under the 'capable of repetition, yet evading review' exception to the mootness doctrine." *Id.* at 1018. In deciding whether that exception applies, the Court first considers whether the challenged action evades review because its duration is "too short to allow full litigation before it ceases or expires," and then considers whether it is capable of repetition based on "a reasonable expectation that the plaintiffs will be subjected to the challenged action again." *Id.* at 1018.

Although the MPSC enacted the *Whitehall Wind* LEO standard in 2010, that standard did not adversely impact Plaintiffs until the MPSC issued Order 7500 in the summer of 2016. In October of 2016, FLS Energy filed a petition asking FERC to initiate an enforcement action against the Montana Commission and

NorthWestern for their violations of FERC's regulations implementing PURPA. FERC issued a "Notice of Intent Not to Act and Declaratory Order" on December 15, 2016.

Although FERC chose not to bring an enforcement action, it found that the MPSC's LEO standard was inconsistent with PURPA and FERC regulations. As this Court noted in its order denying the Montana Commission's motion to dismiss, the Montana Commission could have started the "amendment process as early as January, 2017, after the Federal Energy Regulatory Commission issued its declaratory order on December 16, 2016." (Doc. 51 at 3). The MPSC not only failed to start the amendment process, it chose to ignore FERC's declaratory order. In response to a request to reconsider Rule 7500 in light of FERC's declaratory order, the Montana Commission issued Order No. 7500d, in which it states: "FERC's declaratory order is advisory only and is non-binding unless and until it is upheld by a federal district court." (Doc. 1-7 at ¶ 107).

Plaintiffs responded by bringing the instant case. Shortly after this case was filed, the Montana Commission voted to initiate a rulemaking regarding the LEO standard. Having belatedly started the amendment process, the MPSC moved this

Court to stay this action pending its completion of the process. Although the Court denied the MPSC's motion to stay, it gave the Montana Commission until June 27, 2018 to respond to Plaintiffs' pending motion for summary judgment and file its own cross-motion, thus giving the Montana Commission sufficient time to complete its rulemaking process on June 26, 2018.

It is clear from the timing of the the MPSC's actions, as outlined above, that this case meets the "evading review" prong of the exception to the mootness doctrine. The Court must therefore consider whether there is "a reasonable expectation that the plaintiffs will be subjected to the challenged action again." *Karuk Tribe*, 681 F.3d at 1018.

While the MPSC may have implemented a new standard, it has not made any change to Order 7500 and has failed to address the argument that the MPSC's reliance on the *Whitehall Wind* standard in Order 7500 continues to adversely impact Plaintiffs and similarly situated QFs. Indeed, the Montana Commission continues to insist that the *Whitehall Wind* standard does not violate PURPA, arguing, in its response to Plaintiffs' motion for summary judgment, that "Plaintiffs have failed to demonstrate that Montana's standard for establishing a

LEO, first articulated by the Commission in *Whitehall Wind*, is impermissible under PURPA." (Doc. 59 at 3). The MPSC's continued defense of the *Whitehall Wind* standard and its refusal to defer to FERC's declaratory order creates a strong possibility that the MPSC may return to the *Whitehall Wind* standard in the future.

This Court has jurisdiction to decide whether the *Whitehall Wind* standard violates PURPA. Plaintiffs' request that the Court declare that the *Whitehall Wind* standard violates PURPA and its implementing regulations is not mooted by the MPSC's recently completed rulemaking.

## B. Plaintiffs' Motion for Summary Judgment as to their Request for a Declaratory Judgment

Congress enacted PURPA "to encourage the development of cogeneration and small power production facilities and thus to reduce American dependence on fossil fuels by promoting increased energy efficiency. To achieve this objective, Congress sought to eliminate two significant barriers to the development of alternative energy sources: (1) the reluctance of traditional electric utilities to purchase power from and sell power to nontraditional facilities, and (2) the financial burdens imposed upon alternative energy sources by state and federal utility authorities. *Independent Energy Producers Ass'n v. California Public*

Page 19 of 27

*Utilities Commission*, 36 F.3d 848, 850 (9th Cir. 1994).

Congress tasked FERC with the authority and responsibility to "establish regulations that obligate public utilities to sell electric energy to and purchase electric energy from QFs." *Id.* [4] Although PURPA requires the Commission to promulgate regulations regarding the rates for these purchases, it delegates to the states "the primary role in calculating avoided costs and in overseeing the contractual relationship between QFs and utilities operating under the regulations promulgated by the Commission." *Id.* at 856.

FERC also has the authority to enforce the rules it promulgates. 16 U.S.C. § 824a-3(h). QFs may petition FERC to enforce PURPA and the rules promulgated by FERC, 16 U.S.C. § 824a-3(h)(2)(B), which is what FLS Energy did when it filed a petition on October 17, 2016, asking FERC to initiate an enforcement action against the Montana Commission and NorthWestern.[5] Although FERC

---

[4] Although the term QFs in *Independent Energy Producers Ass'n* referred to cogeneration facilities and the Plaintiffs in this case produce solar power, the Court accepts, for purposes of this case, that each QF Plaintiff is a qualifying facility under PURPA and FERC regulations.

[5] A copy of FERC's "Notice of Intent Not to Act and Declaratory Order" is attached to Plaintiffs' complaint as exhibit 1 and referenced in this opinion as Doc. 1-1.

declined to initiate an enforcement, thus paving the way for Plaintiffs to file their complaint in this Court, FERC also issued a Declaratory Order setting out its position on the issues raised by the petition. (Doc. 1-1 at 7).

FERC explained in its order that the statement of position "can provide assistance to a court on the Commission's thinking in the event that the petitioners decide to bring enforcement cases." (Doc. 1-1 at 8). In its declaratory order, the Commission found that the MPSC's LEO standard, commonly referred to as the *Whitehall Wind* standard, as used in Order 7500 was inconsistent with PURPA and FERC's regulations because "the Montana Commission's requiring a signed interconnection agreement is no different than requiring a utility-signed contract, and equally impermissible." (Doc. 1-1 at 11).

Plaintiffs ask this Court to defer to FERC and enforce its order because FERC is entitled to deference when interpreting its own regulations. (Doc. 36 at 17). The Montana Commission contends that FERC's declaratory order is "entitled only to *Skidmore* deference – that is, the declaratory order is 'entitled to respect' but only to the extent that it is persuasive." (Doc. 59 at 13, citing *Exelon Wind 1*, 766 F.3d at 392-93 (5ᵗʰ Cir. 2014)). For purposes of this motion, the

Court accepts the position advanced by the MPSC.

Having reviewed FERC's declaratory order and the parties' arguments, the Court finds the reasoning of the declaratory order persuasive and agrees that the standard relied on by the Montana Commission in Order 7500 violates PURPA and FERC's regulations by allowing the utility unilateral control over the creation of a legally enforceable obligation. While the standard relied on by the MPSC has been replaced, the MPSC's continued insistence that the standard is acceptable under PURPA requires this Court to address the issue. The Court therefore grants Plaintiffs' motion for summary judgment as to Part A of their prayer for relief.

## C. MPSC's Motion for Summary Judgment as to Plaintiffs' Request For Injunctive Relief

Having decided to grant Plaintiffs' request for a declaratory judgment, the Court turns to Plaintiffs' request for injunctive relief. The Montana Commission argues that the Court need not enter an injunction ordering it to implement PURPA in a lawful manner by adopting a standard for establishment of a Legally Enforceable Obligation that is consistent with PURPA and FERC's December 2016 ruling because it has already done so. The Court agrees that Plaintiffs' request for an injunction ordering the Montana Commission to adopt a new

standard has been mooted by the completed rulemaking process.[6]

The next issue to be decided is whether the Court has jurisdiction to grant the relief requested in the second clause of Part B of Plaintiffs' request for relief, in which they seek a permanent injunction "directing Defendants to allow any QFs that satisfied that standard on or before June 16, 2016, including the QF Plaintiffs, to contract with and sell their output to NorthWestern under the Prior QF-1 Tariff's avoided-cost rate of approximately \$66/MWhr." (Doc. 1 at 37 - 38). The Montana Commissiont having presumably adopted an LEO standard that complies with PURPA and FERC's December 2016 order as part of its rulemaking, the Court could grant the request Plaintiffs seek by ordering the Montana Commission to apply its newly created standard retroactively and allow any QF that satisfied that standard on or before June 16, 2016, including the QF Plaintiffs, to contract with and sell their output to NorthWestern under the Prior QF-1 Tariff's avoided-cost rate.

---

[6] The MPSC notes that its "New LEO standard may be subject to a proper implementation challenge." (Doc. 69 at 14). To raise such a challenge, Plaintiffs must first petition FERC. The Court sympathizes with Plaintiffs' frustration with what appears to have been intentional delay by the MPSC, but cannot go beyond its jurisdictional limits on the basis of that sympathy.

The Montana Commission characterized the additional relief sought by Plaintiffs as "contracts for their individual projects with a specific rate of $66 per megawatt hour (MWh)." (Doc. 69 at 3). The Montana Commission argues that the Court lacks jurisdiction to grant this request because it raises an as-applied challenge. The Court agrees that "a request for a specific contract at a specific price is an as-applied challenge that does not belong in this forum." *Winding Creek Solar LLC v. Peevey*, 293 F.Supp.3d 980, 994 (N.D. Cal. 2017).

Plaintiffs are not asking for a specific contract at a specific rate – they are asking the Court to declare that Order 7500 is invalid to the extent that it relied on the LEO standard commonly known as the *Whitehall Wind* standard. The Court agrees with Plaintiffs that this constitutes a proper implementation claim because Order 7500 applies generally to all QFs that interconnect with NorthWestern. In granting the relief sought by Plaintiffs, the Court would order the MPSC to apply its new LEO standard retroactively to any QF that met that standard on June 16, 2016, not just to Plaintiff QFs.

By ordering this relief, however, the Court would be imposing a burden on the Montana Commission to determine which projects established an LEO on or

before June 16, 2016 under its new standard and would be ordering retroactive relief, raising an Eleventh Amendment issue.

The Montana Commission admits that the Eleventh Amendment does not bar a QF plaintiff from seeking prospective declarfatory or injunctive relief under PURPA, citing *Ex Parte Young*. (Doc. 61 at 21). Although Plaintiffs make a valiant effort to convince the Court that the relief they seek is prospective, they cannot overcome the fact that they are asking the Court to order the Montana Commission to turn back the clock and re-write Order 7500 in such a way that each QF Plaintiff could benefit from the Prior QF-1 Tariff rate. The relief sought by Plaintiffs is not prospective in nature and does not fall within the *Ex Parte Young* exception to the Eleventh Amendment. The Court therefore grants Defendants' motion for summary judgment as to Part B of Plaintiffs' claim for relief.

## CONCLUSION

Plaintiffs' case here, in the simplest of terms, is that they answered our nation's call for new energy at a clearly agreed and effective compensation only to find ultimately, after expending hundreds of thousands of dollars in performance,

that the agreed upon payment had been cut in half. In the rulings hereinfore made, this Court has exhausted its jurisdiction. Plaintiffs may or may not be able to take this matter to a state court for relief, and the Court makes no comment on this point.

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment (Doc. 35) is granted as to Part A of its claim for relief. Let Judgment enter in favor of Plaintiffs and against Defendants in the form of a declaratory judgment holding that the *Whitehall Wind* test utilized by Defendants in Order 7500 for determining QFs' continued eligibility to sell at rates under the Prior QF-1 Tariff violates PURPA and its implementing regulations.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (Doc. 60) is denied as to Part A of Plaintiffs' prayer for relief and granted as to Part B of Plaintiffs' prayer for relief. Let Judgment enter in favor of Defendants in an order dismissing Part B of Plaintiffs' prayer for relief.

Although Plaintiffs requested attorneys' fees and costs in Part C of their prayer for relief, they did not argue this issue in their briefs or during oral argument. Given that Plaintiffs prevailed only as to Part A of their claim for

relief, the Court finds that neither party is entitled to fees or costs.

The Clerk of Court is directed to enter judgment in accordance with this order.

Dated this 30th day of November, 2018.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE